This is an action against the Atlantic Coast Line Railroad Company and the Southern Express Company to recover damages for failure to receive and transport certain beef, alleged to be the property of the plaintiff.
The plaintiff testified as follows: "I am the plaintiff. On 7 August last I was living here in Tarboro. I was at that time in the wholesale beef business. About 1 August I received a letter from Mr. Hampton saying he had a couple of cows to sell me, and I told him when he had them ready I would come down and kill them. He wrote me to come, that he had the cattle up. I put them on the platform at the station and they failed to take them on board the train. The night before I took them to the platform I went to see the agent. I had the cattle shut up in his lot and asked him could I ship the beef from there by express, and he said I could; his son would attend to it; that he was going to Rocky Mount; so I killed the beef and the agent's son weighed it and I marked it all right and Mr. Fagan attended to it for me. Mr. Fagan was the agent at Darden. There was one beef going to Greenville and one going to Tarboro. *Page 479 
"When I carried the beef to the depot we put it in the (549) warehouse because it was raining. Mr. Fagan is the agent of the railroad company and express company there.
. . . . . . .
"Mr. Fagan's son was at the platform to help put the beef on the train. Just as soon as the train left I went down and asked the agent to give me a receipt for my beef, got the postmaster and another man to see the beef was in good shape and marked all right so I would be safe in getting my money. . . . That is the writing that the agent there gave me. They left the beef right there. The beef was very large and the porter refused to come in and help pull the beef out, and the agent asked him to come in and help. They began to fuss and curse each other. I left the beef there in the agent's hands and he said that he sold the hide. I have forgotten exactly the weight of the beef, but those are the claims that I filed at the time. One claim was for $40.30 and one for $15.90, making $56.20. I think that was a fair valuation for the beef. I was shipping the beef to be paid for after it was delivered. The train passed there the next morning and never touched the beef. The beef was all in bags. It was also properly marked.
. . . . . . .
"Mr. Fagan told me I could ship it from Darden. I took it to the station to ship by express. I have shipped four beefs from Darden since. I don't know whether there are books kept there or not . . . . I had never shipped beef from Darden by express before. My principal shipping points were Jamesville and Pinetown . . . . If Mr. Fagan had not told me I could ship it from Darden by express I would have carried the beef to Jamesville.
. . . . . . .
"There is only one store at Darden. There is a warehouse there used by both companies and two waiting-rooms, and it is a nice little place."
A witness for the plaintiff, C. B. Fagan, testified as follows: "I live in Darden. On 7 August I was looking after the farm for my father while he was away. Mr. Nelson had seen my father about (550) shipping the beef, and asked me if I would flag the train and see about getting the beef off. I told him my father did not have anything to do with the express, but I would be there and I would flag the train and tell them the beef was there. When the train passed I flagged it and told the baggage-master the beef was there. Captain Wooten did not know anything about it. The express messenger was in the car. I saw him. I told him there was some beef to go; he said `All right,' and told me to call the porter to help put it on, and he saw the beef. The porter just failed to load the beef. The beef was too heavy for him to *Page 480 
handle and too heavy for me to get out, and I asked him to help me and he did not do it, so I did not drag it out and the porter began to curse. I could not load the beef. The beef was marked and properly wrapped up. I told Mr. Nelson that I would see to its being put on the train. I did not tell him I would help load it. I told him I would flag the train and tell the baggage-master that it was there; but it was my intention to help load it; I was acting for my father, and he looks after the freight. I did not look after the express. Express is sent from there, but the only representative is the express messenger on the train; when any one has any freight to send they just flag the train and help put the express on the train. There has been beef sent from there before, but I don't know how many times. They had never refused to take on any beef from there before. The reason this was not taken was because the porter refused to help me put it on. Mr. Nelson put the beef in the warehouse because it was raining. The beef was not taken the next day. The beef stayed there and decayed. I finally sold the hide for $2.50. I have the money and intended turning it over to whoever it was decided it belonged to; I thought that I would save somebody that much. I have said before that beef had been shipped before from there."
Cross-examination: "Mr. Nelson wanted to ship his beef by express. There had been beef shipped from there before by express. It was always carried out and put in the express car and received by the (551) express messenger. I don't know where he bills his beef from. I only know the messenger had received beef from there before. I told the express messenger that the beef was there, and I also told the porter. The express messenger and the baggage-master are the same. The express messenger was Mr. Edmunson. There is an office there, but no books are kept there. No tickets are sold there, and my father just looks after the freight that is put off there. He does not issue any bills lading. I have never known him to sign any as agent."
Redirect examination: "They have warehouse and a platform at Darden. The train stops there whenever it is flagged. There are two waiting-rooms there, but they do not sell any tickets there. Freight is shipped from there. I did give Mr. Nelson a paper-writing after the train left. It is a statement of the weight of the beef received. I gave him the paper showing that the beef was brought to the station to be shipped, properly marked.
"DARDEN, N.C., 7 August, 1913.
 "Received 451 pounds beef and 74 pounds hide from W. C. Nelson, Tarboro, N.C.; 2 sacks, 141 pounds, Greenville, N.C., H. Coben. H. A. Rollings Co., 310 pounds, Tarboro, N.C.
"(Signed) C. C. FAGAN, Agt. *Page 481 
"This is the paper I gave Mr. Nelson. The statement shows that the porter refused to take the beef on the train. I did not notify the express company or have any communication with them about the beef being there. I did not have any orders to send the beef out next day."
There was evidence that the messenger for the express company was also baggage-master for the railroad company, and that the porter usually helped to load express on the car.
The conductor testified, among other things, "The porter usually helps load express at small stations," and the express messenger testified: "I received express at Darden when it was put on the car. The shipper, with the assistance of the porter, puts the express in the car. The porter usually helps."
There was also evidence on the part of the defendants that Darden was a nonagency station and that neither the railroad nor the express company had an agent there, and that C. C. Fagan was (552) not the agent of either company.
At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiff excepted and appealed.
The judgment of nonsuit in favor of the railroad company must be sustained.
The evidence of the plaintiff shows that he intended to ship by express and not as freight, and there is nothing to show any delivery to the railroad company as carrier, or any purpose to make such delivery, and there is no evidence of negligence which would justify holding that company liable as warehouseman.
The evidence against the express company is, in our opinion, sufficient to be submitted to the jury.
The plaintiff testifies without any qualification that there is a warehouse at Darden used by both companies, and that C. C. Fagan is the agent of the railroad company and of the express company. He also testifies that he saw C. C. Fagan before he attempted to make delivery of the beef, and asked him if he could ship the beef from Darden by express, and that Fagan said he could, and it was also in evidence that the beef was delivered in the warehouse for the purpose of shipment, properly wrapped and marked.
This evidence is denied by the defendant, which raises an issue of fact to be determined by the jury, and which the judge could not decide as a matter of law. *Page 482 
If this issue should be determined against the plaintiff, there is another aspect of the case which is proper for the consideration of a jury. It is not denied that Edmunson was the agent of the express company, and it is in evidence that the beef was in the warehouse where it was seen by Edmunson when the train stopped; that Edmunson was told that the beef was for shipment by express and he said "All right," and that the porter would help load it, and that the beef was not actually (553) delivered upon the car on account of the failure of the porter to help. Edmunson was the agent of the express company and baggage-master for the railroad, and the porter usually helped to load express.
This furnishes some evidence of acceptance of the shipment by the express messenger and that the porter was agent of both companies.
The judgment of nonsuit is therefore affirmed so far as the railroad company is concerned and set aside as to the express company.
Affirmed as to the railroad company.
Reversed as to the express company.